UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
GREENEVILLE DIVISION

| ADVANCED DISPOSAL SERVICES TENNESSEE HOLDINGS, INC., | ) ) ) | |
|---|---|---|
| | ) | 2:18-CV-00177-DCLC |
| Plaintiff, | ) ) ) | |
| vs. | ) ) ) | |
| LUSK DISPOSAL SERVICES, INC., | ) ) ) | |
| Defendant. | | |

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court following a bench trial on July 28, 2020. Plaintiff, Advanced Disposal Services Tennessee Holdings, Inc. (Advanced Disposal), sued Defendant, Lusk Disposal Services, Inc. (Lusk Disposal), for breach of contract. In accordance with Federal Rule of Civil Procedure 52(a)(1), the Court makes the following findings of fact and conclusions of law.

**I.      Findings of Fact**

Lusk Disposal is a solid waste collection and transport company based in Princeton, West Virginia. In February 2017, Lusk Disposal owned the HAM Sanitary Landfill in Peterstown, West Virginia. However, it was expanding the HAM landfill and could not dump its normal amount of solid waste at that site. At the time, it was also in the process of acquiring the Copper Ridge Landfill. Lusk Disposal also deposited solid waste at various other landfills in Virginia and West Virginia. Three Virginia counties in which Lusk Disposal operated had local ordinances that prevented its municipal solid waste (MSW) from being removed from their respective counties. Violating the ordinance could result in criminal penalties.

In late February 2017, because of its need for additional disposal sites, Mr. George Lusk (Lusk), the president of Lusk Disposal, instructed his company's office and project manager, Sloan Smith (Smith), to contact Advanced Disposal about the cost of using its disposal sites on a temporary basis. Smith contacted Mr. Charles Appleby (Appleby), Advanced Disposal's general manager at its Blountville, Tennessee location, and advised him of Lusk Disposal's temporary need for access to additional disposal sites for its waste material. After some negotiation, Smith and Appleby agreed to a rate of $22.75 per ton.

On March 3, 2017, Smith emailed Appleby about wanting to begin using the Blountville landfill beginning March 6, 2017, and submitted to Appleby a completed credit application.[1] Appleby emailed Smith a disposal service agreement along with Exhibit A, which had a place to fill in price and volume terms. The agreement was a single spaced five-page form containing several detailed contract terms. Some portions had been completed. For example, on the last page, it identified the disposal site as the "Blackfoot Landfill." Some portions were not. For example, at the top of page three, the agreement contained the following duration provision:

> The term of this agreement shall be ○ until final completion of the project identified on Exhibit A; or ○ for a period of ____ months from the effective date. Customer grants contractor the exclusive right of disposal of Customer's waste material during the term and for any renewals.

Appleby did not complete this section. This section provides that if the contract is for a specific duration, the customer also agrees to dispose all its waste material with Advanced Disposal. This is the "exclusivity" provision. As noted, Appleby left it blank.

Lusk and Smith read the entire agreement. On Exhibit A to the agreement, Smith wrote in the terms on which she and Appleby had agreed, that is, the price of $22.75 per ton of waste

---

[1] Once approved, this would permit Lusk Disposal to pay by credit instead of sending its drivers with blank checks to pay Advanced Disposal at the time of delivery.

material disposed of, no "put or pay" agreement, and no volume requirements. She also left blank the duration provision on page three because Lusk Disposal was only interested in a temporary arrangement with Advanced Disposal, and because Appleby had never mentioned that Advanced Disposal required either a specific duration or an exclusivity term. After Lusk signed it, Smith emailed Appleby the completed disposal service agreement.

Lusk Disposal began delivering its waste material to the Blountville landfill that same day.[2] Lusk Disposal paid all invoices either at the time of delivery or, once its credit application had been approved, on credit. Eight days later, on March 15, 2017, Dave Rettell, an Advanced Disposal employee, noticed the agreement Appleby had sent to Smith incorrectly identified the disposal site as the "Blackfoot Landfill" when the actual site Lusk Disposal was using in Blountville was the "Ecosafe Landfill." Rettell emailed Appleby to correct this error: "We need to set this up as a Ecosafe agreement."

Appleby emailed Smith the following:

Hi Sloan,

This is the disposal agreement with the correct facility in page 5, I filled in the info for you guys so would only need a signature on page 5 and initials on page 7. I apologize for the error. If you have any questions please call my cell.

Thanks,

Charlie Appleby Jr.,
General Manager

[Exhibit 13].

Appleby attached "the disposal agreement" in which he correctly identified the disposal site as the "Ecosafe Landfill." He also typed in the Account Number Advanced Disposal had

---

[2] Despite agreeing to a $22.75 per ton charge, Advanced Disposal only charged Lusk Disposal $21.00 per ton.

3

assigned to the agreement, and Lusk Disposal's name and address. He also typed in the provisions of Exhibit A, which Smith had filled in by hand: the agreed upon price per ton, "0" in the column for estimated volume, and "0" in the "put or pay" column. He added in the Additional Comments section that "Transfer waste estimated at 1500 tons a month."

What Appleby did not mention was that he changed the duration portion on page three of the contract to 12 months. This, of course, triggered the exclusivity provision. To do this, he filled in the small dot in the termination provision relating to the duration of the contract and typed in the number "12" in the blank for the time the contract was to be effective. Neither Smith nor Lusk noticed the new additional terms Appleby had inserted—terms he had not included in the initial contract nor had ever discussed with Smith.

Agreeing to an exclusivity provision would have fundamentally altered Lusk Disposal's entire business operations.[3] The Court finds credible the testimony of both Lusk and Smith that Lusk Disposal would not have assented to those terms if they had known about them. This is borne out by the uncontested facts. Lusk Disposal was in the disposal business itself and had contracts with six other landfills in Virginia and West Virginia for disposal of its waste material. It also had its own landfill. It would have made no sense to have agreed to haul *all* its waste material from West Virginia to Tennessee. Lusk testified that the geographical distance between the delivery points in West Virginia and Blountville, Tennessee would not be feasible. Just one haul would take between 4 ½ to 5 hours. Additionally, Lusk Disposal *could* not agree to the exclusivity

---

[3] As noted, Appleby did not say anything about this. Why he was silent on that issue is uncertain as Appleby did not testify. However, it is clear from the testimony of Rick Prather, Advanced Disposals operations manager, that he expected the agreement to be of a longer duration. But Prather did not speak with Smith or Lusk, leaving it to Appleby to negotiate. It was Appleby who sent the initial disposal service agreement with no duration and no exclusivity requirement and with the wrong landfill. And, Lusk Disposal knew nothing of Prather's expectations that would be in any way inconsistent with its agreement with Appleby.

4

provision without violating the local county ordinances of the three counties that strictly prohibited transporting its MSW outside the county for disposal.

Lusk signed page five and initialed page seven as Appleby had requested and returned the contract to him. According to the uncontradicted testimony, not knowing that Appleby had changed the agreement, Lusk Disposal believed it had negotiated a non-exclusive agreement with Advanced Disposal for an indefinite term—that is, the agreement was valid as long as they needed the additional space for disposal of its waste material. It had no set minimum tonnage requirements and no "put or pay" provision.

Appleby signed the contract as well but did not send a copy of the fully executed contract back to Lusk Disposal. As it had been doing since March 6, Lusk Disposal continued to use—but not exclusively—Advanced Disposal for disposal of its excess solid waste material in accordance with what it believed to be the agreement, and it paid what Advanced Disposal billed it. This continued until April 17, 2017 when Lusk Disposal no longer needed additional disposal space. By this point, Lusk had paid Advanced Disposal $41,694.24.

After April 17, Lusk Disposal did not dispose any more of its waste material with Advanced Disposal. Smith testified that she believed that the contract had been completed. In fact, Advanced Disposal did too. The summer passed with no further communication between the parties. Sometime during the summer, however, Appleby left as general manager, and Justin Rodda took over the job. To Smith's surprise, on August 11, 2017, 116 days after Lusk Disposal stopped using Advanced Disposal, Rodda (who also did not testify at the trial) contacted Smith to advise her that Lusk Disposal was in breach of the disposal service agreement it had signed. She asked how that could be. Rodda responded that Lusk Disposal had agreed to a duration provision of 12 months which triggered the requirement that Lusk Disposal dispose all its waste material with Advanced

5

Disposal exclusively. She was astounded as she testified neither she nor Appleby ever even discussed those rather material provisions. Rodda advised Smith that Appleby was gone and she had to deal with him now. In response to her shock, Rodda sent Smith a copy of the revised disposal service agreement. Smith and Lusk had never seen the completed termination section of the revised contract and, as noted, would not have agreed to it if they had. When Lusk Disposal refused to pay, Advanced Disposal sued.

## II. Conclusions of Law

"Because jurisdiction in this case is based upon diversity of citizenship, state law governs matters of substance while federal law dictates procedural issues." *In re American Casualty Co.*, 851 F.2d 794, 798 (6th Cir. 1988) (citations omitted). As to substantive matters, the Court must determine which state's law governs. Plaintiff is a Delaware corporation with its principle place of business in Florida. It is licensed to do business in Blountville, Tennessee as "Ecosafe Landfill." Throughout this case, the parties have applied Tennessee law. Indeed, Tenn. Code Ann. § 47-1-301(b) provides that Tennessee law applies "to transactions bearing an appropriate relation to the state of Tennessee." The agreement, however, provides that Florida law applies. But this is not controlling as a company's choice of law will only be honored where the proposed state's law has a material connection to the transaction at issue. And, for this dispute, Tennessee bears an appropriate relation to this dispute, Florida does not.[4]

---

[4] The Court mentions this not because there was ever an issue raised about what law should apply, as both parties have argued the application of Tennessee law to various legal issues in this case. The Court mentions it only because buried deep in page four, in small print, of the Disposal Agreement is the sentence "This Agreement shall be governed by the laws of the state of Florida without regard to conflicts-of-law principles that would require the application of any other law…." (Exhibit 1, pg. 4). In any event, there is no material difference in Florida law and Tennessee law when it comes to the requirements for the formation of a contract. *Vision Palm Springs, LLLP v. Michael Anthony Co.*, 272 So. 3d 441, 444 (Fla. Dist. Ct. App. 2019) ("Contract

6

In Tennessee, "[a] valid, enforceable contract requires consideration and mutual assent, manifested in the form of an offer and an acceptance." *Ace Design Group, Inc. v. Greater Christ Temple Church, Inc.*, No. M2016–00089–COA–R3–CV, 2016 WL 7166408, *7 (Tenn. Ct. App. Dec. 8, 2016) (citing Restatement (Second) of Contracts §§ 17, 22 (1981)). "Under general principles of contract law, a contract must result from a meeting of the minds of the parties in mutual assent to the terms." *Sweeten v. Trade Envelopes, Inc.*, 938 S.W.2d 383, 386 (Tenn. 1996). "Courts determine mutuality of assent by assessing the parties' manifestations according to an objective standard." *Moody Realty Co., Inc. v. Huestis*, 237 S.W.3d 666, 674 (Tenn. Ct. App. 2007) ("In other words, we must determine whether a reasonable onlooker, based upon the parties' outward manifestations, would conclude that the Huestises and the agents agreed to be bound by the terms of the written contract.") (citing *Staubach Retail Servs.-Southeast, LLC v. H.G. Hill Realty Co.*, 160 S.W.3d 521, 524 (Tenn. 2005)).

The initial service disposal agreement is a valid contract. The parties had negotiated the price per tonnage, the volume, and set no fixed duration. Lusk Disposal executed the contract and returned it Appleby. About the time they executed the contract if not before, Lusk Disposal began making deliveries pursuant to the agreement. It is true that no party produced a copy of the agreement that Appleby had signed, but a signature is not always required to establish a binding contract. *See Moody Realty*, 237 S.W.3d at 674 (citing *Staubach*, 160 S.W.3d at 524; *T.R. Mills Contractors, Inc. v. WRH Enters., LLC*, 93 S.W.3d 861, 866 (Tenn. Ct. App. 2002)). "The parties' actions or inactions, as well as spoken words, can establish mutual assent." *Moody Realty*, 237 S.W.3d at 674 (citing *Burton v. Warren Farmers Coop.*, 129 S.W.33d 513, 521 (Tenn. Ct. App.

---

formation requires a manifestation of mutual assent, the existence of which is determined by an objective test").

7

2002)). In this case, Advanced Disposal began accepting the deliveries of Lusk Disposal's waste material and charged them accordingly. This conduct evinces acceptance by Advanced Disposal. Therefore, the initial contract is valid beginning March 7, 2017. More importantly, this contract had no volume requirements, was of indefinite duration, and did not require Lusk Disposal to use Advanced Disposal exclusively for the disposal of all, or any, of its solid waste material. On April 17, 2017, it stopped using the Ecosafe Landfill, and it was under no contractual obligation to continue to do so.

This brings us to Appleby's revised "Agreement." Advanced Disposal now argues that this revised agreement, signed on March 15, 2017, supersedes the first one, and includes the 12-month term and the exclusivity provision for which its damages claim is based. Lusk Disposal argues that this revised contract is not binding as it includes terms that the parties did not agree to.

The Court starts with the obvious problem for Lusk Disposal, and that is, Lusk signed the contract. "One who signs a contract cannot later plead ignorance of its contents if there was an opportunity to read it before signing." *Moody Realty*, 237 S.W.3d at 676 (citing *Solomon v. First American Nat'l Bank,* 774 S.W.2d 935, 943 (Tenn. Ct. App. 1989)). Generally, parties are held to a contract that they sign. *See Moody Realty*, 237 S.W.3d at 676; *Giles v. Allstate Ins. Co.*, 871 S.W.2d 154, 157 (Tenn. Ct. App. 1993). There are exceptions to this general rule and one is where "neglect to read is not due to carelessness alone, but was induced by some stratagem, trick, or artifice on part of one seeking enforcement of the contract." *Hand v. Dayton–Hudson,* 775 F.2d 757, 760 (6th Cir. 1985); *see also Teague Bros., Inc. v. Martin & Bayley, Inc.*, 750 S.W.2d 152, 158 (Tenn. Ct. App. 1987). The exception excuses the failure to read. Thus, the issue is whether Lusk Disposal was induced by some trick of Appleby's that excused their not reading the entire contract again. The Court finds that it was.

8

Eight days after the parties were doing business under this agreement, Dave Rettell, an employee of Advanced Disposal (and who also did not testify), noticed the agreement identified the wrong landfill and directed Appleby to get that corrected. Appleby emailed Smith with "*the* disposal agreement with *the* correct facility in page 5… [and] *only* need a signature on page 5 and initials on page 7." Ex. 13 (emphasis added). And, he "*apologized* for the error." *Id.* (emphasis added). Appleby intended to convey to Smith that the only change to "the agreement" was the correction of the disposal site. Why else would he "apologize for the error?" The error was certainly not that he forgot to make this a 12-month exclusive contract that would fundamentally change Lusk Disposal's business operations.

Appleby did not just send "the disposal agreement with the corrected facility." He changed it. This was a material change. Indeed, Appleby's change would upend Lusk Disposal's business operations. He cleverly neglected to mention it. In other words, he changed a material term of the agreement without any discussion with Lusk Disposal—a change Lusk Disposal knew nothing about much less had agreed to. His email was nothing but a trick to have Lusk Disposal focus on one thing – the name of the corrected landfill and that they "only" needed to sign it. Appleby's deceptive email excused Lusk Disposal from reading the entire contract again. *Shelbyville Hospital*, 2016 WL 552352, at *5 (citing *Teague Bros.*, 750 S.W.2d 152) ("the duty to read a contract before signing can be suspended where a party's negligence is induced by false representations as to its contents").

Inserting new terms without telling the other party is nothing new. In *Hand v. Dayton-Hudson*, an attorney who had been discharged from his firm was presented with a release, which he had to accept by certain date to receive a severance. *Hand v. Dayton-Hudson*, 775 F.2d 757, 758 (6th Cir. 1985). He initially declined, but then advised that he was prepared to accept the offer.

9

He returned the "release" to the law firm that he had signed. But, unbeknownst to the law firm, the attorney, using the same type-set, added a provision that he did not release claims pertaining to age discrimination and breach of contract. The law firm signed what it thought was the same release it had given to the attorney and paid him. When the attorney sued the law firm for age discrimination and breach of contract, the law firm claimed the attorney had defrauded it. The district court agreed and dismissed the case. The Sixth Circuit also agreed, finding the attorney had committed fraud by not informing the law firm of the changes he made in the release. "The failure to read most definitely resulted from [the attorney's] clever scheme." *Hand*, 775 F.2d at 760.

Advanced Disposal could have done this differently and could have obtained a different result. Appleby could have advised Lusk Disposal that the initial agreement was terminated and attached the new offer. But he did not do that. Instead, he represented that he sent "the agreement with the corrected facility." He "apologized for the error." He "only" needed their signature on page five and initials on page seven. He brought attention to certain changes without ever mentioning the other—more material—changes he had made to the agreement. He had a duty to tell Smith of these changes. Because he did not, the revised agreement is not a result of a meeting of the minds. Lusk Disposal did not breach the disposal service agreement. Lusk Disposal has already paid Advanced Disposal the amount billed for the waste material delivered. Advanced Disposal is not entitled to any damages.

### III. Conclusion

Given the above findings of fact and conclusions of law, the Court finds that Advanced Disposal is not entitled to any damages or attorney's fees. Lusk Disposal has entirely satisfied its

10

Case 2:18-cv-00177-DCLC-CRW   Document 40   Filed 08/11/20   Page 10 of 11   PageID #: 194

obligations under the contract. The case shall be **DISMISSED WITH PREJUDICE** with Advanced Disposal recovering nothing from Lusk Disposal.  A separate judgment shall enter.

SO ORDERED:

s/ Clifton L. Corker  
United States District Judge